## ABRAHAM MORRIS ROSENKOVITZ *vs.* UNITED RAILWAYS AND ELECTRIC COMPANY.

*Leading Question—Prayer Not Referring to Pleading—Action Against Street Railway Company for Throwing Newsboy off Car—Instructions to the Jury—Oral Instruction to the Jury by Trial Court.*

To allow a leading question to be asked is a matter to a considerable extent within the discretion of the trial Court.  No reversible error is committed by that Court's allowing a leading question to be asked when it does not appear that the appellant was injured by the answer made thereto.

When a prayer does not refer to the pleading in the case, its correctness depends upon the evidence alone.

It is competent for the trial Court to reject all prayers offered and instruct the jury in its own language, and when such instruction is correct, and covers the whole ground, the judgment will not be reversed although some of the rejected prayers might have been granted.

In an action against a street railway company the evidence on the part of the plaintiff, a newsboy, was that he got on a car of the defendant company as a passenger and was offering to pay his fare when the conductor kicked him off the platform while the car was in motion, causing the injuries for which the action was brought.  The evidence on the part of the defendant was that the plaintiff was not a passenger, that the conductor did not touch him, but told him to get off as the car stopped; that plaintiff did not then get off but afterwards when he saw the conductor returning to the platform, jumped off and fell down in so doing.  *Held*, that there was no error in rejecting the prayers offered by the plaintiff, and in lieu thereof instructing the jury that if they believe that the plaintiff got upon the defendant's car for the purpose of riding as a passenger and duly tendered or was about to tender his fare to the conductor, but that the conductor without reason refused to receive the same, and wantonly ejected him from said car, with a kick, then the verdict should be for the plaintiff.

*Held*, further, that it was also correct to grant, in connection with that instruction, a prayer offered by the defendant to the effect that if the jury believe that the plaintiff was upon the car for the purpose of selling newspapers, then the verdict must be for the defendant, unless the jury also find that the injury to the plaintiff was caused by the conductor's either wantonly or with reckless carelessness pushing and kicking the plaintiff off the car while it was in motion.

*Held*, further, that in regard to damages, the jury were properly instructed that if they believe the conductor refused to accept the plaintiff's fare and kicked him off the car, that being a wanton and wilful act,. they may allow the plaintiff punitive damages in addition to compensatory damages, and that in making their computation as to the latter, they are to allow the plaintiff only such damages as are shown with reasonable certainty to have resulted as the direct effect of the injury received by him, and that the defendant is not responsible as a part of the compensatory damages for any ailments from which the plaintiff may suffer but which resulted from any other cause than the injury received in the manner mentioned.

A newsboy who boards a car for the purpose of selling papers, without paying a fare, is not a passenger but a mere licensee, and the railway company owes him no duty except to observe ordinary care for his protection after discovering that he is in a perilous position and to refrain from inflicting upon him a wilful and wanton injury.

The trial Court may give to the jury an oral instruction of its own, or may explain orally the effect of instructions granted at the instance of the parties.

But when an oral instruction given by the Court is somewhat inconsistent with the written instructions granted by it, and is in part a duplication of the latter, it is calculated to mislead and confuse the jury and constitutes reversible error.

*Decided June 24th, 1908.*

Appeal from the Superior Court of Baltimore City (NILES, J.)

*Defendant's 3rd Prayer.*—If the jury believe from the evidence that at the time he received the injuries for which this suit is brought, the plaintiff was upon the car of the defendant for the purpose of selling newspapers to the passengers, then the verdict must be for the defendant, unless the jury further find that the injury to the plaintiff was caused by the conductor of the car either wantonly or with reckless carelessness pushing and kicking the plaintiff off the car while it was in motion.    (*Granted in connection with the Court's instruction.*)

*Defendant's 6th Prayer.*—The Court instructs the jury that even if they find for the plaintiff, the jury, in making their computation as to compensatory damages, are to allow him only such damages as in their opinion it has been affirmatively proven with reasonable certainty to have resulted as the natural, approximate and direct effects of the injury received by him and mentioned in the evidence.    The defendant is not held responsible as a part of the compensatory damages for any ailments which the plaintiff may suffer which resulted from any other cause than the injuries received on the occasion mentioned in the evidence.    (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*David Ash*, for the appellant.

*R. Lee Slingluff* and *J. Pembroke Thom*, for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The record in this case contains four bills of exception. Three relate to the rulings of the Court upon the admissibility of testimony, and the fourth presents the action of the Court in refusing the plaintiff's prayers, in granting the defendant's third, fourth, and sixth prayers, and further in granting a writ-

ten instruction designated as Court's Instruction No. 1 in lieu of the plaintiff's rejected prayers, and also to the action of the Court, at its own instance, in granting a verbal instruction, which will be quoted in full in a subsequent part of this opinion.

The suit was brought by the plaintiff, an infant, by his father and next friend, in the Superior Court of Baltimore City, against the defendant corporation to recover damages for personal injuries sustained while upon one of the defendant's cars, as particularly detailed in the several counts of the declaration.

The *narr.* contains three counts. The first alleges that whilst the infant was a passenger and was conducting himself in an orderly and properly manner, the defendant corporation by its servants and agents wrongfully and unlawfully assaulted and beat him, and forcibly and unlawfully ejected him from the car, whereby he was seriously and permanently injured and suffered mental and physical pain and anguish.

The second avers that the plaintiff, an infant of about nine years of age, was with the leave and license of the defendant company, upon one of its cars, and while so rightfully upon the car was assaulted, beaten and permanently injured in the manner stated and set out in the first count.

And the third count charges, in substance, that the plaintiff boarded the defendant's car on or about the 3rd of July, 1905, intending to become a passenger and offered to pay his fare, but that he was wrongfully assaulted and ejected from the car while it was moving rapidly by the conductor thereof in the manner described in the previous two counts.

The case was tried before a jury and the judgment being for the defendant, the plaintiff has appealed.

The substantial issue in the case is presented by the rulings of the Court as set out in the bills of exception and the conclusion reached by the jury on the facts renders it unnecessary for us to do more than to examine the questions raised by the action of the Court in its rulings.

The plaintiff was a newsboy about nine years of age, selling papers upon the streets in the city of Baltimore, and on the

3rd of July, 1905, boarded one of the appellee's cars near Exeter and Lombard streets, for the purpose of selling papers and for the purpose of proceeding further in the city to serve his customers.

The theory of the infant plaintiff's case is that he was upon the defendant's car as a passenger, or that he intended to become such and offered to pay his fare, but when he was handing the conductor the fare, the latter grabbed him and said, "Get off, you damned Jew," and kicked him off the platform of the car while it was in motion. The boy's testimony was corroborated by the witnesses, Salerno and Hartman, who testified on behalf of the plaintiff. They were on the street, near the car, and stated they saw the conductor grab the boy and kick him off the car.

The evidence on the part of the defendant company was in direct conflict with that offered on the part of the plaintiff.

The conductor testified that he never assaulted the boy, did not grab or kick him, or say to him, "get off, you damned Jew," and the boy did not offer to pay his fare. He further testified: "On July 3rd, 1905, a newsboy boarded the car at Pratt and Exeter streets. The car stopped at Granby and Exeter streets to let a lady on, and I told him to get off, and he had plenty of time to get off when the lady got on, and I went in to collect the lady's fare, and when I came out the boy was still on the rear platform, and he saw me coming out and got scared and jumped off and fell over some watermelons. I didn't touch him; never had my hands on him. He got on at Pratt and Exeter streets and I stopped at Granby street to let a lady on and I told him to get off; the boy was then standing on the sidewalk on the street; when I told him to get off he was on the rear platform standing beside the rail on the right-hand side."

The conductor's testimony was supported by that of two passengers, who were on the platform of the car at the time of the occurrence, and who testified on the part of the defendant company.

In this state of the proof, and there being a manifest con-

flict in the evidence, it is clear upon all the authorities that the questions of fact were for the jury to determine upon proper instructions from the Court, and the verdict of the jury is conclusive on the facts.

The questions then upon this branch of the case are exceedingly narrow, because unless the Court committed some error whereby the plaintiff was injured, in its rulings on the evidence and the prayers, or in its action in submitting its own written and verbal instructions, the judgment of the Court must stand and cannot be disturbed.

The record does not disclose any reversible error in the rulings of the Court in permitting the questions to be asked the witness set out in the first, second and third bills of exception. The questions may be regarded as somewhat leading, and for this reason, bad in form for examination in chief, but it is difficult to perceive in what way either the questions propounded or the answers given could have injured the plaintiff's case. Leading questions are defined to be those which ordinarily suggest to the witness the answer desired or which, embodying a material fact, admit of a direct answer by a simple yes or no, or which instruct a witness how to answer on material points.

In *Buschman* v. *Morling*, 30 Md. 388, it is said: "Under what circumstances such questions may be asked is a matter very much under the control of the Court, in the exercise of a sound discretion."

There was no objection offered to the questions as leading at the time they were propounded and before they were answered. There was no reversible error in the rulings under these exceptions. *Frownfelter* v. *State*, 66 Md. 80; *Jones* v. *Jones*, 36 Md. 447; *Black* v. *B. & O. R. R. Co.*, 107 Md. 642.

We come now to the rulings of the Court upon the prayers, as presented by the fourth exception and here, it will be observed that neither the granted, rejected nor modified prayers, make any reference to the pleadings, nor are they referred to in either the written or oral instructions given by the Court. In such case, no question upon the pleadings can arise in this

Court, but the broad proposition is presented whether the evidence establishes a case entitling the plaintiff to recover in any form of action. *Fletcher* v. *Dixon*, 107 Md. 420; *Bldg. Asso.* v. *Grant*, 41 Md. 569; *Leopard* v. *Canal Co.*, 1 Gill, 222; *Giles* v. *Fauntleroy*, 13 Md. 126.

At the trial of the case, the Court rejected all of the instructions submitted by the plaintiff and stated to the jury, that he gave in lieu of them, "Court's Instruction No. 1," covering the general grounds sought to be presented by the instructions asked by the plaintiff. The Court's Instruction No. 1, was as follows: "If the jury believe that the plaintiff got upon the defendant's car for the purpose of riding as a passenger and duly tendered or was about to tender his fare to the conductor, but that the conductor without reason or excuse refused to receive said fare, called him a "damned Jew" and forcibly and wantonly ejected him from said car, giving said plaintiff a kick as he ejected him, then the verdict should be for the plaintiff."

The defendant's third prayer it appears from the record, was granted, in connection with the Court's written instruction, and is to this effect: "If the jury believe that at the time he received the injuries the plaintiff was upon the car of the defendant for the purpose of selling newspapers to the passengers, then the verdict must be for the defendant, unless the jury further find that the injury to the plaintiff was caused by the conductor of the car either wantonly or with reckless carelessness pushing and kicking the plaintiff off the car while it was in motion."

It is the settled law of this Court, says BARTOL, C. J., in *P. W. & B. R. R. Co.* v. *Harper*, 29 Md. 330, that "it is competent for the Court below to reject all the prayers offered and grant instructions to the jury in its own language, and where these are correct and cover the whole ground, the judgment will not be reversed though some of the prayers might have been granted."

But when this is done, all the cases hold "the law ought to be declared fully and accurately and in terms certain, explicit and intelligible to the jury upon the points raised by counsel."

There was no error in the Court's Instruction No. 1, in lieu of the plaintiff's prayers under the evidence in the case, nor to the defendant's third prayer granted in connection with it.

The defendant's sixth prayer as to compensatory damages, and the Court's verbal instruction as to punitive damages, in connection with the Court's Instruction No. 1, are also free from objection.

It will not then be necessary in deciding the law applicable to this branch of the case to refer to the plaintiff's prayers, because they were all rejected by the Court, and Court's Instruction No. 1, was given in lieu thereof. If that instruction covered the law of the case as we have held in connection with the other granted prayers the appellant would have no cause of complaint in this respect.

The gravamen of the plaintiff's complaint against the defendant as offered by the plaintiff's evidence was that as a passenger upon the car, he had been wrongfully assaulted and ejected therefrom, and even if not a passenger, he was entitled to protection from the violence of its employees.

The defendant's theory as presented by the testimony was that the plaintiff was a newsboy, that the conductor did not assault him, but that he contributed to his own injury by jumping from the car while in motion.

There can be no reasonable dispute as to the law applicable to a case of this character upon either theory as herein stated. If the assault was made and the plaintiff was ejected whilst a passenger, and whilst the conductor was in its employ, executing "the contract of transportation" (provided the jury found these facts), the company would clearly be responsible. *B. & O. R. R. Co.* v. *Barger*, 80 Md. 23; *C. Ry. Co.* v. *Peacock*, 69 Md. 259; *Cate* v. *Schaum*, 51 Md. 309; *Consol. Ry. Co.* v. *Pierce*, 89 Md. 504.

In *Steamboat Co.* v. *Brockett*, 121 U. S. 649, the Court holds, that a common carrier of passengers undertakes absolutely to protect them against the misconduct and illegal acts of its own servants engaged in executing the contract.

The duty and obligation of a street railway company to a

newsboy who enters upon its cars for the purpose of selling
papers and who pays no fare, has been clearly defined by
the Courts of this country.   He is not a passenger but a mere
licensee or trespasser and the company owes him no duty
except to use ordinary care for his preservation after discov-
ering his peril and to refrain from inflicting wilful, reckless
and wanton injury.   The recognized law upon this subject is
well stated in a case note, entitled "Duty of carrier to one
whom it permits to enter its cars upon his own business and
not as a passenger," in the report of the case of *Peterson* v.
*South. & Western Railroad*, 8 L. R. A. (N. S.) 1240, where
the leading cases are cited and collected.

In this State the rule of law applicable to cases where inju-
ries result to persons bearing the relation of mere licensees
has been established by a long line of decisions.   *B. & O. R.
R. Co.* v. *State*, 79 Md. 335; *Benson* v. *Traction Co.*, 77 Md.
535; *Maenner* v. *Carroll*, 46 Md. 193.

The defendant's third prayer substantially presented these
propositions of law as herein stated and the Court committed
no error in granting it.

The fourth prayer as modified submitted in substance the
proposition that the burden of proof was upon the plaintiff to
show by the weight of the evidence that the injury was caused
by the violent and wrongful act of the conductor and unless
the jury so found, their verdict must be for the defendant.
The prayer was properly granted.

This brings us to a consideration of the remaining question
in the case, and this arises on the fourth exception, in the ac-
tion of the Court, at its own instance, in submitting the follow-
ing verbal instruction to the jury.

"Gentlemen of the Jury.—The instructions under which the
case now comes to you are these: I have refused all the in-
structions that the plaintiff prepared, and in place of those
give this instruction as covering the general grounds sought
to be covered by the instructions asked by the plaintiff (afore-
said 'Court's instruction' No. 1 was here read); in connection
with that, I grant the prayer as to damages as follows: The
Court instructs the jury that if the jury find for the plaintiff

under the Court's instruction, then in estimating the damages, they are to consider the health and condition of the plaintiff before the injuries complained of, as compared with his present condition in consequence of said injuries and whether said injuries are, in their nature, permanent, and how far they are calculated to disable the plaintiff from engaging in those business pursuits for which, in the absence of said injuries, he would have been qualified, and also the physical and mental suffering to which he has been subject by reason of the injuries, and to allow such damages as in the opinion of the jury, will be fair and just compensation for the injuries which the plaintiff has suffered, and the jury may also in their discretion allow punitive or exemplary damages. At the instance of the defendant I have granted this prayer (defendant's third prayer read); at the instance of the defendant, I have granted his fourth prayer as follows (defendant's fourth prayer, as modified, read). The defendant's sixth prayer I grant as follows (defendant's sixth prayer read). The object of these instructions, taken as a whole, is to present to you the two theories of this case, held by the plaintiff and the defendant. The Court instructs you practically that if you believe the story which the plaintiff told here that the conductor refused to accept his fare, put him off the car and kicked him off in the process of his ejectment, that then you are to find for the plaintiff, and being a wanton, wilful and inexcusable act, you are at liberty first to allow compensatory damages and in addition to that punitive damages. But if, on the other hand, you believe the defendant's story that the newsboy got upon the car, went in the car and sold such papers as he could, got off in pursuance of the conductor's order at Granby street, then got on the step after that and then seeing the conductor approach, or as the conductor was approaching, got off the car himself while the car was in motion, and the conductor never laid his hands upon him, then your verdict must be for the defendant.

"The object of these prayers is to eliminate such matters as were not contained either in the defendant's case or plaintiff's case, and submit the stories of each side; and it is in your province to determine what you believe in regard to this matter."

The plaintiff insists that there was error in granting this instruction, as it tended to mislead and confuse the jury to his manifest prejudice and injury, and in this objection we all concur.

Whatever may be the rule and practice in other jurisdictions, under the settled practice in this State, the Courts are not bound to give either written or oral instructions. While it is competent for the Court to give instructions of its own, either written or oral or explain the effect of those granted provided they are not inconsistent, we have found no case in this State, and none has been cited, where the Court has gone to the extent in an oral instruction, it did in this case.

In *Smith* v. *Crichton*, 33 Md. 103, it is said, the law may be *sufficiently* expounded to the jury through oral instructions. In *Downey* v. *Forrester*, 35 Md. 117, it was held to be competent for the Court by an oral instruction to make an explanation, *ex mero motu* of written instructions previously granted by the Court. And in *Hussey* v. *Brown*, 64 Md. 426, it is said, so far as defendant's exception to this last instruction rests upon its being voluntary or an explanation of the prayer to which it relates, it is well settled that the Court may give instructions of its own or explain the effect of those granted *at the instance of the parties*, provided they are not inconsistent therewith. Such an interposition is often salutary and promotive of a clear understanding of the law, especially if its rulings are not understood or as sometimes occurs are contravened or misconstrued in the argument to the jury.

While it is clear that the power exists in the Courts of submitting an oral instruction in cases where it applies, or may be considered necessary, yet it is a power that should be cautiously exercised and will be found in practice a dangerous one and open to abuse. Under our practice, it is not to be approved or commended, except to promote the ends of justice as indicated by the cases cited.

In the case at bar, it is difficult to reconcile parts of the oral instruction with those previously given. It is somewhat inconsistent with the written instructions and may have misled the jury to the prejudice of the plaintiff. In part, it was practically a "duplication of instructions." In *Storr* v. *James*, 84 Md. 290, the duplication of instructions was condemned by this Court. It is there said: "Instructions are intended to

give to the jury a clear and concise statement of the law governing the case. The duplication of instructions has a tendency to mislead or confuse rather than to guide the jury and thus to frustrate the very object intended to be accomplished by their being given at all."

It is also well settled, where a correct and an incorrect instruction have been given on the same subject, it cannot be shown that no injury resulted because it cannot be ascertained by which the jury was governed. *Adams* v. *Capron*, 21 Md. 186.

In *Coffin* v. *Brown*, 94 Md. 203, this Court, in passing upon the effect of an oral statement made by the Court in the presence of the jury, said: "If a written instruction had been granted to the effect of what we have quoted, there could be no doubt that it would have been error, and such oral statements in the presence of the jury were calculated to greatly injure the defendant, and perhaps made it useless for his counsel to argue that question before the jury." 11 *Ency. of Pl. & Pr.*, 114.

We are therefore of opinion that the oral instruction submitted by the Court in this case was calculated to confuse and mislead the minds of the jury, to the injury of the plaintiff's case and should not have been given them. For this error, the judgment will be reversed, and a new trial awarded.

> *Reversed and new trial awarded, with costs.*