BETHLEHEM STEEL COMPANY *v.* GOLOMBIESKI

[No. 211, September Term, 1962.]

*Decided March 19, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and MARBURY, JJ.

*Joseph H. Young* and *Mathias J. DeVito,* with whom were *Piper & Marbury* on the brief, for appellant.

*I. Duke Avnet,* with whom was *Herman Shapiro* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

The primary question presented by this appeal is whether the evidence that the employee had suffered a ruptured congenital cerebral aneurysm[1] while working for the employer was sufficient in law to support the finding that the employee had sustained an accidental personal injury arising out of and in the course of his employment.

The claim for compensation filed by the employee (Edward

---

1. According to *Webster* the preferred spelling is *aneurysm,* but the word may also be spelled *aneurism.* Prior Maryland cases have used both spellings.

J. Golombieski) against the employer (Bethlehem Steel Company) is based on the premise that he was permanently and totally disabled as a result of an accidental injury. The Workmen's Compensation Commission (commission) found that the claimant had not suffered an accidental injury and disallowed the claim. The claimant appealed to the Superior Court of Baltimore City. At the hearing of the appeal before a jury, the lower court denied the motion of the employer for a directed verdict and submitted the case to the jury on the issue of whether or not the claimant had sustained an accidental injury. In its charge, the court, having first instructed generally as to the law of the case, specifically told the jury in pertinent part that:

> "An injury is only accidental when it results from some unusual strain or exertion or some unusual condition in the employment. If the incident causing the claimant's disability is a normal incident of his work, the injury thus sustained is not under the law an accidental injury.
>
> "If you find that during the course of [the employee's] work he did not engage in any unusual exertion or any unusual strain, or that he did not work under any unusual conditions, but that the course of his work causing disability was a normal incident of his work, then even [though] he suffered a rupture of [the] aneurysm you must find that he did not suffer an accidental injury arising out of and in the course of his employment, and your answer to the issue must be 'no.'
>
> "On the other hand, if you shall find from the evidence that the claimant during the course of his work at the plant of [the employer], engaged in any unusual exertion or any unusual strain, or if you shall find that he worked under any unusual conditions and * * * shall further find that any of these factors contributed in any way to the rupture of [the] aneurysm, then you must find in favor of the claimant * * * and your answer to the issue should be 'yes.' "

The jury answered the issue in the affirmative. The employer

filed a motion for judgment *n.o.v.*, and, in the alternative, for a new trial, but both were denied and the appeal to this Court followed.

The claimant had been employed in the steel plant for eight years. Except for a headache that developed as the result of an accident at home, he had never been incapacitated and had worked regularly. In his spare time he had been active in sports and other athletics. He was a mechanical repairman. His duties in the blast furnace department in which he was employed, embraced, among others, the repair of water and gas pipes and involved the use of heavy wrenches. On the day he was injured, he had completed his regular shift and was working overtime on a job in another department in which he had never worked before. The assignment involved the repair of a coke oven gas line on a stove platform between two ovens. The ovens had been taken out of operation for a general overhaul —usually done at five-year intervals—that required the removal and replacement of all gas, water and air lines. The two-inch pipe that had to be removed from the gas line was located (about ten to twelve feet above the ground) on the stove platform that rested on braces between an A-frame or trestle.

Before proceeding with the assignment, the employee and his helper had gone to the shop to obtain tools. Two wrenches— one, an 18-incher weighing 5 or 6 pounds, and the other, a 24-incher weighing 8 or 9 pounds—were carried to the job site by the helper, but because a ladder they needed was a mile away, the employee decided to climb the trestle to get to the pipe he was to work on. After turning off the gas, the employee climbed the trestle, carrying the smaller wrench with him, and, after his helper had handed him the other wrench, attempted to disconnect a rusted and corroded union on the pipe. There was no scaffold or other support on which to work other than a ledge (consisting of a piece of angle iron about 14 to 15 inches wide) on which he had to stand in a crouched position in order to reach the gas pipe. He put one wrench on the pipe and the other on the nut or nipple which formed the union, but because the space below the pipe was open he was unable to set one wrench on something solid and use both hands on the other wrench which would have been the normal thing to do. In-

stead, he put a hand on each wrench and pulled on the larger while holding back on the smaller. He gave the wrenches several pulls, and, when nothing happened, he "gave it all [he] had with all of [his] might" and passed out. The employee at first had smelled gas and it had affected his breathing at the time but a blood test after he had been carried to the plant dispensary showed that he had not been stricken by gas.

There was no evidence that the employee had slipped or fallen or that he had twisted his body or been dealt a blow of any sort. But the claimant, in testifying at the hearing on appeal in response to questions that had been prefaced by his counsel with the inquiry as to whether particular happenings and conditions were "usual or unusual," replied that it was (among other things) *unusual* to work on a trestle in a crouched position and to try to stay there and hold onto two wrenches at the same time; that it was *unusual* to work on a narrow ledge (instead of a scaffold or other support) with two wrenches but without a place to set one of them against the thrust of the other—it was the first time he "ever had run across something like that"; and that it was *unusual* to exert himself as he did on that occasion—it was the first time he had "ever attempted to pull that hard." So far as the record discloses there was no evidence to the contrary.

The employee was received at the plant dispensary in poor condition and was removed to a hospital where operative measures were taken to repair the ruptured aneurysm. His condition has improved over a five year period, but he is permanently and totally disabled from doing any kind of work.

A specialist in vascular surgery (Dr. Oscar B. Camp) was of the opinion—from the facts related in the hypothetical question propounded to him at the hearing and from the history he had obtained from his patient—that when the claimant exerted "an increase in tension and pressure" in attempting to disengage the pipe there was an increase in blood pressure in the weakened blood vessel which in all probability caused the rupture of the aneurysm.

Although the state pathologist (Dr. Russell S. Fisher) was of the opinion that the employment played no part in the rupture of the aneurysm, he was nevertheless also of the opinion

that the "effect of the blood pressure in the artery" had caused the aneurysm to rupture.

(i)

In *Vaughan v. Mayor & City Council of Baltimore,* 229 Md. 547, 184 A. 2d 842 (1962), we recently pointed out (as we had on prior occasions) that in Maryland the term "accidental injury" does not include unexpected results not produced by accidental causes and that this Court has consistently held that in order for an injury to be accidental and therefore compensable it must result from some unusual exertion or strain or some unusual condition in the employment. See also *Eastern Shore Public Service Co. v. Young,* 218 Md. 338, 146 A. 2d 884 (1958); *Rieger v. Wash. San. Comm.,* 211 Md. 214, 126 A. 2d 598 (1956); and *Stancliff v. H. B. Davis Co.,* 208 Md. 191, 117 A. 2d 577 (1955).

The case at bar involves an internal rather than an external injury. Similar cases, depending on the sufficiency or insufficiency of the evidence in each case, fall into one of two categories. Those in which the injury *was not accidental* include such cases as *Heil v. Linck,* 170 Md. 640, 185 Atl. 555 (1936); *Jackson v. Ferree,* 173 Md. 400, 196 Atl. 107 (1938); *Kelly-Springfield Co. v. Daniels,* 199 Md. 156, 85 A. 2d 795 (1952); *Vaughan v. Mayor, Etc., supra.* Those in which the injury *was accidental* include such cases as *Monumental Printing Co. v. Edell,* 163 Md. 551, 164 Atl. 171 (1933); *Schemmel v. T. B. Gatch & Sons,* 164 Md. 671, 166 Atl. 39 (1933); *Baltimore v. Schwind,* 175 Md. 60, 199 Atl. 853 (1938); and *Baltimore & Ohio R.R. v. Zapf,* 192 Md. 403, 64 A. 2d 139 (1949).

The *Schemmel* and *Zapf* cases, both *supra,* point out that under workmen's compensation law the meaning of "accidental" has been extended to include the rupture of an aneurysm and other internal injuries in order to give the word a more liberal construction in harmony with the general intent of the law and make the injury compensable. But, as was said in *Kelly-Springfield Co. v. Daniels, supra* (at p. 162), the "decisive test is whether [the injury of the claimant] was caused by any unusual strain or exertion or any unusual condition in his employment."

The appellant relies on those Maryland cases that have held

that the injury suffered by the claimant was not accidental, particularly the *Heil, Jackson* and *Vaughan* cases, all *supra,* to support its argument that the record in this case does not show any unusual exertion or condition. To further bolster its contention that the extra force put forth by an employee in the performance of his regular or customary duties does not entitle him to compensation should injury result therefrom, the appellant also cites *Mannery v. Waters,* 73 A. 2d 266 (N. J. App. Div. 1950),[2] (in which it was held that the expenditure of extra strength by an employee to perform a regular duty was not an unusual strain or exertion *outside* of his employment), and *Hladky v. Omaha Body & Equipment Co.,* 109 N. W. 2d 111 (Neb. 1961), (in which it was said that there was no accidental injury merely because there was greater exertion than that which was ordinarily incident to the employment). The courts in other jurisdictions, however, have reached a different conclusion. In South Carolina, which follows the "unusual exertion or strain rule," it was held in *Kearse v. S. C. Wildlife Resource Dept.,* 115 S. E. 2d 183 (S.C. 1960), that a coronary occlusion or thrombosis suffered by an employee "constitutes a compensable 'accident' if it is induced by unexpected strain or overexertion in the performance of the duties of his employment or by unusual and extraordinary conditions in the employment." See also *Ricker v. Village Management Corp.,* 97 S. E. 2d 83 (S.C. 1957). In Ohio, where an accidental injury is defined in somewhat the same way as the term is defined in this State in that there is a requirement of unusualness, it was held in *Esmonde v. Lima Locomotive Works,* 1 N. E. 2d 633 (Ohio 1935), that where an employee, engaged in performing his regular duties, is subjected to extraordinary strain, or other unusual condition causing injury, such injury is an accidental injury and therefore compensable. We think the South Carolina and Ohio cases are more in line with the Maryland rule.

On the record it is evident that the present case falls into that category of cases holding that the injury suffered by the

2. Since the decision in *Mannery v. Waters,* 73 A. 2d 266, New Jersey has shifted to the majority view which requires only an accidental result.

employee was accidental within the meaning of Code (1957), Art. 101, § 15. Here the evidence is such as to permit a rational conclusion that the unusual exertion under the unusual conditions was not only accidental but was in fact the cause of the ruptured aneurysm. Not only was the employee required to work under unusual conditions he had never experienced before as a mechanical repairman, but because the rusted and corroded union would not turn, the employee had pulled harder on the wrenches than he had ever previously attempted to do and passed out as a result of the unusual exertion he had then applied. Moreover, it was the extra force thus exerted which, according to the vascular surgery expert, brought about the increase in blood pressure and caused the aneurysm to rupture.

As we see it, the evidence in this case regarding the unusual exertion and unusual conditions in the employment was sufficient in law to support the finding that the claimant had sustained an accidental personal injury arising out of and in the course of his employment. And, since the motion for judgment *n.o.v.* as well as the motion for a directed verdict were properly overruled, the judgment of the lower court reversing the award of the commission will be affirmed.

(ii)

The rulings of the trial court on the evidence were not improper.

One of the contentions is that questions put to the claimant—inquiring whether particular conditions and happenings were "usual or unusual"—called for conclusions relating to the ultimate issue. We think that the objection is of little force here and that no prejudice resulted from the form of the questions or the answers since the witness gave not only his conclusion, but his reasons for reaching that conclusion. The cases of *Bethlehem Steel Co. v. Traylor,* 158 Md. 116, 148 Atl. 246 (1930), and *Greenwald, Inc. v. Powdermaker,* 170 Md. 173, 183 Atl. 601 (1936), seem dispositive of the contention. Evidence as to usualness was permitted in both cases. In *Traylor* it concerned conditions. In *Powdermaker* it concerned the habits of the claimant's deceased husband.

The other contention—to the effect that the same questions

were leading—involves a matter which is usually left to the discretion of the trial court. *American Oil Co. v. Wells*, 164 Md. 422, 165 Atl. 298 (1933) ; *Rosenkovitz v. United Rys. Co.*, 108 Md. 306, 70 Atl. 108 (1908). We find no abuse of discretion.

> *Judgment affirmed; appellant to pay the costs.*